338 So.2d 82 (1976)
Kenneth HEMMERLE et al., Appellants,
v.
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF DESOTO COUNTY, a Banking Corp., et al., Appellees.
Nos. 76-62 to 76-64.
District Court of Appeal of Florida, Second District.
October 8, 1976.
*83 Nancy Little Hoffman, of Druck, Grimmett, Norman, Weaver & Scherer, and Carl J. Zarcone, Fort Lauderdale, for appellants.
David C. Holloman, Arcadia, for appellee First Federal.
GRIMES, Acting Chief Judge.
This is an appeal from a judgment of mortgage foreclosure.
The appellants/lot owners borrowed money from the appellee/lender for the purpose of building homes on their properties. Incident to the loan, they signed promissory notes secured by mortgages on their lots and also construction loan agreements. The notes went into default before the construction was completed, and foreclosure proceedings were commenced. A number of materialmen who had filed mechanics' liens were also joined as party defendants. The cases were consolidated for trial. During the course of the proceedings, the lender obtained an order permitting it to expend undisbursed loan funds for the completion of construction pursuant to the plans and specifications. However, by the time of foreclosure the homes were still unfinished and the lender still retained undisbursed loan funds. Nevertheless, the mortgages were foreclosed at the face amount of the notes. The amount of the foreclosure judgment and the undisbursed loan funds with respect to each lot are set forth below:

 FORECLOSURE UNDISBURSED
 LOT JUDGMENT LOAN FUNDS 
 No. 27 $51,392.49 $ 6,316.03
 No. 28 $52,678.29 $ 6,584.26
 No. 29 $71,782.70 $23,654.48

At the time of the foreclosure hearing, the court, with the concurrence of the parties, deferred adjudication on the validity of the claims of lien because it was conceded that even if valid these lien claims were inferior to the liens of the mortgages. It was felt that unless the foreclosure sales brought a surplus from which the lien claimants might be satisfied, there would be no need to go to the trouble of litigating over the lien claims. The properties were ultimately bought by the lender at the foreclosure sales for a bid price which in each instance was approximately $1,000 less than the amounts of the foreclosure judgments.
The thrust of appellants' arguments on this appeal is that the court erroneously entered foreclosure judgments predicated upon the face amount of the notes when, in fact, substantially less than these amounts had actually been advanced by the lender. We find the appellants' contentions to be well taken.
Each of the construction loan agreements contained the following provision:
"3. That the Association may, at any time, without consent of the undersigned, if in its opinion it becomes necessary so to do, pay bills and/or complete said building or buildings in accordance with plans and specifications, etc., on file with it, using for such purposes, including therein the unexpended net proceeds of this loan, upon which funds the Association shall have a first lien for any one or more such purposes, but nothing herein contained shall be in any way construed as a covenant on the Association's part to so pay or complete."
This provision gave the lender the right to use the undisbursed loan funds to complete the houses. Pursuant to the court order, the lender had spent small amounts of money to this end, but by the time of the foreclosure, the houses were still unfinished and there were still substantial amounts of undisbursed loan funds.
*84 The lender takes the position that it was entitled to foreclosure judgments based upon the total amount of the loan commitments as reflected by the promissory notes because it would have to complete the houses when it bid in the properties. The lender postulates that if there was any money left over after the houses were finished, this would then be divided among the successful lien claimants and the balances, if any, would go back to the property owners. All of this presupposes that the lender was the successful bidder. If the lender were not the successful bidder, it would be in the position of having a windfall unless the undisbursed loan funds were then transferred to the new bidder. While we have no doubt that this lender would follow through on its moral commitment, none of this is set forth in the final judgment.
The main vice in this procedure is that it had the potential of chilling the bidding at the foreclosure sale. Any outside bidders were faced with having to make a bid high enough to exceed the amount of the judgment which the lender could be expected to bid in. Yet, since the lender had never advanced the full amount of the monies upon which the judgment was based, the property had not been enhanced to the extent it should have been had the total loan been made, because the construction loan agreement required all advances to be incorporated into the property. By virtue of permitting a judgment to be entered upon the basis of an amount in excess of the funds actually paid out by the lender, there was much less chance of having a surplus from the foreclosure sale, and since the landowners were disputing the validity of the lien claims, they had a legitimate interest in the creation of a surplus.
The foreclosure judgments were also in error in another respect. They included an award for the lender's attorney's fees, even though no testimony was taken concerning the amount of a reasonable fee, and there was no stipulation that a fee could be set in the absence of testimony. Nivens v. Nivens, 312 So.2d 201 (Fla.2d DCA 1975).
Accordingly, the foreclosure judgments and the sales must be set aside. At the new foreclosure hearing, the lender should submit an accounting of all funds expended by it to date for the construction of the homes. The foreclosure judgments should be based on the total of the monies actually advanced on the loan and properly expended by it toward construction. Then, if the lender is the successful bidder at the foreclosure sale, it will then have the balance of the undisbursed loan funds to assist in the completion of construction. If there is a surplus at the foreclosure sale, it can be divided among the successful lien claimants with the balance, if any, to be paid to the owners.
REVERSED.
SCHEB, J., and BENTLEY, E. RANDOLPH, JR., Associate Judge, concur.